IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA   :

   :

   v.   : Criminal Case No. DKC 13-0282-1

   :

DON JUAN CAMPBELL   :

   :

**MEMORANDUM OPINION**

Don Juan Campbell is currently serving a 130 month sentence imposed in December 2014 for Conspiracy to Distribute and Possess with Intent to Distribute at Least 1 Kilogram of Phencyclidine, 5 Kilograms of Cocaine, and 280 grams of Cocaine Base in violation of 21 U.S.C. §846 and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c).  The offense conduct concluded in June 2013, having begun at some time prior to 2005.  He filed a Motion to Reduce Sentence, pro se, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release). (ECF No. 339), which was followed by a motion prepared by counsel. (ECF No. 341).  The Government filed an opposition, (ECF No. 347), and Mr. Campbell replied.  (ECF No. 349).[1]  For the following reasons, the motions for compassionate release will be denied.

---

[1] The motions to seal (ECF Nos. 342, 346, 348) are GRANTED. The personal medical information should remain private, except as recited herein.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions, including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id*. § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

3559(c), for the offense or offenses for which
the defendant is currently imprisoned, and a
determination has been made by the Director of
the Bureau of Prisons that the defendant is
not a danger to the safety of any other person
or the community, as provided under section
3142(g);

and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission[.]

Judge Hollander described the next step of the analysis:

Accordingly, in order to be entitled to relief
under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must
demonstrate that (1) "extraordinary and compelling
reasons" warrant a reduction of the sentence; (2) the
factors set forth in 18 U.S.C. § 3553(a) countenance a
reduction; and (3) the sentence modification is
"consistent" with the policy statement issued by the
Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of
Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy
Statement." The text mirrors the statute. Application
Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and
Compelling Reasons" in part as follows (emphasis added):

1. Extraordinary and Compelling Reasons.
Provided the defendant meets the requirements
of subdivision (2), extraordinary and
compelling reasons exist under any of the
circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a
terminal illness (*i.e.*, a serious and advanced
illness with an end of life trajectory). A
specific prognosis of life expectancy (*i.e.*,
a probability of death within a specific time
period) is not required. Examples include
metastatic solid-tumor cancer, amyotrophic
lateral sclerosis (ALS), end-stage organ
disease, and advanced dementia.

3

(ii) The defendant is—

**(I) suffering from a serious physical or medical condition**,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"),

Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  The Attorney General issued a second memorandum to Carvajal on April 3, 2020, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate...." *Id.*

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19.  The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.  *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

*United States v. Kess*, No. 14-cr-480-ELH, 2020 WL 3268093, at *3-4 (D.Md. June 17, 2020) (footnote omitted).

The defendant argues that he meets the "extraordinary and compelling reasons" standard based on the combination of his underlying medical conditions and the extensive COVID-19 outbreak at FCI Elkton.  Specifically, Mr. Campbell argues that he suffers from hypertension and, potentially, diabetes.  (ECF No. 343, at 2).  Either of these medical conditions, Mr. Campbell suggests, would put him at heightened risk for a severe case of COVID-19.  Such risk, he argues, is especially pronounced in light of the current situation at FCI Elkton:  as of the date of this opinion, that facility currently houses 358 inmates and three staff members who have tested positive for COVID-19, and has already seen nine

deaths as a result of the outbreak.  Bureau of Prisons, COVID-19 Update, (https://www.bop.gov/coronavirus/index.jsp) (last accessed July 15, 2020).

Because of the extent of the outbreak, FCI Elkton has been the subject of extensive habeas litigation in the United States District Court for the Northern District of Ohio.  On April 22, Judge Gwinn of that court granted a preliminary injunction mandating that certain especially vulnerable inmates be transferred out of the facility immediately, finding that FCI Elkton's "'dorm-style' design guarantees that inmates remain in close proximity to one another."  See *Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *1 (N.D. Ohio Apr. 22, 2020), *enforcement granted*, No. 4:20-CV-00794, 2020 WL 2542131 (N.D. Ohio May 19, 2020), and *vacated*, No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).  Mr. Campbell neither fell into the vulnerable subclass that Judge Gwinn designated on April 22, nor was he granted compassionate release following Judge Gwinn's later order mandating additional review of compassionate release appeals and requests in FCI Elkton.  Rather, the warden at FCI Elkton denied Mr. Campbell's request and appeal, which, the government concedes, means that Mr. Campbell has met his administrative exhaustion requirement.  (ECF No. 346 at 4 n. 1).

Finally, Mr. Campbell further asserts that he does not pose a danger to the community, and the § 3553(a) factors warrant

release.  He concedes that his offense conduct was serious, but
notes that while he was dealing drugs prior to the offense conduct
for which he is currently incarcerated, he has no record of
violence.  Mr. Campbell has participated in educational courses
and programming that will help reduce his likelihood of recidivism,
including as the top student in an HVAC apprenticeship program
which he would have completed but for its discontinuance during
the pandemic.  (ECF No. 343, at 15).  He proposes to live with
family in Maryland who will assist him in the community upon his
release.

     The government counters that "there is no indication that
the Defendant is currently suffering from hypertension" or
diabetes.  (ECF No. 5-6).  The government is correct.  Mr. Campbell
has received no diagnosis of diabetes, and his speculation
regarding his own symptoms are insufficient to meet the
compassionate release standard.  As to the issue of Mr. Campbell's
hypertension, the record is less clear.  Bureau of Prisons Health
Services forms submitted to this court demonstrate issues with
hypertension as recently as 2016, (ECF No. 343-3, at 1), as well
as a record from 2019 which makes note of a previous hypertension
diagnosis.  (ECF No. 347-3, at 11).  Mr. Campbell's presentence
report indicates a self-reported issue of "high blood pressure,"
for which he was prescribed "Hydrochlorothiazide and another
unknown medication." (ECF No. 343-2, at ¶ 78).  Mr. Campbell does

note that hypertension "is considered a long-term condition that can be managed by medicine or other management methods.  A 1995 study submitted to the National Center for Biotechnology Information at the U.S. National Library of Medicine notes just that – 'Hypertension is a major chronic disorder which calls for a long-term treatment.'"  (ECF No. 349, at 2).  This uncertain diagnosis, however, is not enough.  Beyond the self-reported note on high blood pressure in the presentencing report, Mr. Campbell has provided no evidence that he currently suffers from hypertension or that he has received treatment for hypertension at any point in the past five years.

Because Mr. Campbell has not provided "extraordinary and compelling reasons" for compassionate release, the court ends its analysis without turning to the § 3553(a) factors.  The motions for compassionate release will be denied.  A separate order will be entered.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
